**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CARLA M.[1],**

      **Plaintiff,**

                              **Civil Action 2:24−cv−4250**
                              **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, Carla M, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No.8), and the administrative record (ECF No. 6). Plaintiff did not file a Reply. For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors (ECF No. 7) and **AFFIRMS** the Commissioner's decision.

## I.  BACKGROUND

Plaintiff filed her application for DIB on November 6, 2020, alleging that she has been disabled since October 17, 2016, due to "generalized anxiety disorder, panic disorder, depression, autoimmune thyroiditis/hypothyroid, obesity/involuntary weight loss, ventricular

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[premature complexes], depolarization/bradycardia arrhythmia, GERD, diverticulosis/IBS, lumbar disc herniation/ radiculopathy, [and] sleep disorders." (R. at 144-49, 182.) Plaintiff's applications were denied initially in March 2021 and upon reconsideration in August 2021. (R. at 69-77, 79-88.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 106-07.) ALJ Margaret O'Donnell held a telephone hearing on August 2, 2022, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 33−67.) A vocational expert ("VE") also appeared and testified. (*Id.*) On September 20, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 28−32). The Appeals Council denied Plaintiff's request for review, and she filed suit in this Court. *See* [*Carla M.*] *v. Comm'r of Soc. Sec.*, S.D. Ohio Case No. 2:23-cv-2553 (R. at 1015-1018.) On September 29, 2023, this Court remanded the matter for further proceedings upon the parties' joint motion. (R. at 1019-1023.)

On remand, the claim was assigned to ALJ Irma J. Flottman. Pursuant to the remand order, the Appeals Council directed ALJ Flottman to:

- Give further consideration to the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c. As appropriate, the Administrative Law Judge may request the medical sources provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical sources.

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96 -8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant 's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge

2

will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00 -4p).

(R. at 937.)

ALJ Flottman held a telephone hearing on September 10, 2024, at which Plaintiff, again represented by counsel, appeared and testified.  (R. at 969−987.)  The ALJ issued a decision again denying Plaintiff's application on October 4, 2024, (R. at 934−968.)  Plaintiff did not request review by the Appeals Council, opting to directly file suit with this Court.   This matter now is properly before this Court for review.

## II.      RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and hearing testimony as to Plaintiff's conditions and resulting limitations.  Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.     ADMINISTRATIVE DECISION

On October 4, 2024, ALJ Flottman issued her decision.  (R. at 934−968.)  The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through

December 31, 2021. (R. at 940.) Then, at step one of the sequential evaluation process,[2] the

ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her

alleged onset date of October 17, 2016, through her date last insured of December 31, 2021.

(*Id.*) At step two, the ALJ found that through the date last insured, Plaintiff had the following

severe impairments: obesity; degenerative disc and joint disease of the spine, status post remote

surgical intervention; affective disorders, including depression and adjustment disorders; and an

anxiety disorder with panic. (*Id.*) At step three, the ALJ further found that, through the date last

insured, Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (R. at 942.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> [T]hrough the date last insured, Plaintiff had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except Plaintiff could perform tasks that did not involve a specific production rate pace, such as assembly line work or an hourly production quota. [Plaintiff] could deal with occasional changes in a routine work setting. She could tolerate occasional interaction with the public, coworkers, and supervisors.

(R. at 944, footnote omitted.)

At step four of the sequential process, the ALJ determined that Plaintiff has no past relevant work.[3]  At step five, relying on the VE's testimony, the ALJ concluded that, through the date last insured, Plaintiff would have been able to perform jobs that existed in significant numbers in the national economy, such as a cleaner, laundry worker, or counter supply worker. (R. at 959-60.)  The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from October 17, 2016, the alleged onset date, through December 31, 2021, the date last insured.  (R. at 960.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

---

[3] The ALJ noted that Plaintiff's date last insured was December 31, 2021 and five years prior to that time was December 31, 2016. Since Plaintiff ceased work activity prior to that time, the ALJ found there was no evidence of past relevant work. (R. at 959.)

5

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices Plaintiff on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.     ANALYSIS

Plaintiff raises three statements of error.  First, Plaintiff contends that the ALJ erred at step 2 of the sequential evaluation process.  Further, Plaintiff asserts that the ALJ erred in evaluating the medical source opinions of her treating sources, Ruslana Kurpita, M.D., and James W. Viers, D.C.  (ECF No. 7 at 14-19.)  Although not entirely clear, in the context of that argument, Plaintiff also appears to challenge the ALJ's evaluation of the state agency reviewing physicians and psychologists.  (*Id*. at 18.)  Finally, Plaintiff argues that the ALJ's finding that Plaintiff could perform work at the medium level of exertion was not supported by substantial

evidence because there was no documentation or opinion stating that Plaintiff could perform work at the medium level of exertion. (ECF No. 7 at 20-22.) Within these statements of error, Plaintiff also claims that the hypothetical question to the vocational expert did not match the ALJ's RFC finding, thereby requiring remand. (*Id.* at 22.) The Court disagrees on all points raised by Plaintiff and finds that the ALJ's decision is supported by substantial evidence.

### A. The ALJ's Step 2 determination

As noted, Plaintiff contends that the ALJ erred at step two of the sequential evaluation. According to Plaintiff, the ALJ's errors took many forms. For example, Plaintiff argues that the ALJ's finding that certain impairments were non-severe was contrary to the medical evidence. (ECF No. 7 at 11.) Further, Plaintiff contends that the ALJ failed to comply with Ruling 96-8 because she did not consider all of Plaintiff's impairments – both severe and non-severe – in formulating the RFC. (*Id.* at 12.) Finally, Plaintiff claims that the ALJ erred by posing a hypothetical question to the VE that did not reflect the RFC adopted in her decision. (*Id*. at 13.) The Court considers the first two issues in turn. With respect to the third issue Plaintiff's raises regarding the ALJ's step two determination, the Court will consider it below in connection with Plaintiff's third stated error.

With respect to the claimed error regarding the ALJ's finding that certain impairments were non-severe, the Court finds that there is no merit to Plaintiff's argument. ALJ Flottman determined that Plaintiff had the following severe physical impairments: obesity, degenerative disc and joint disease of the spine, status post remote surgical intervention, affective disorders, including depression and adjustment disorders, and an anxiety disorder with panic. (R. at 940.) At the same time, the ALJ found that Plaintiff's hypothyroidism with goiter/Hashimoto's thyroid

disease, intermittent irregular heartbeat, hypertension, GERD, irritable bowel syndrome, diverticulitis, menopause, tinnitus and bilateral eustachian tube dysfunction, iodine deficiency, allergies, bereavement, rosacea, vitamin D deficiency, mixed hyperlipidemia, and sleep apnea treated with CPAP were "non-severe" because they caused only transient and mild symptoms. (R. at 940-941.)

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1520(a)(4)(ii). Additionally, to be classified as "medically determinable" an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "'If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.'" *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021) (quoting *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017). "At step two of the sequential analysis, Plaintiff has the burden of proving the existence of a medically determinable impairment." *Id.* (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (stating that the burden of proof lies with [Plaintiff] at steps one through four of the process and only shifts to the ALJ at step five); *Smith v. Comm'r of Soc. Sec.*, No. 2:20-CV-5473, 2021 WL 3883061, at *3 (S.D. Ohio Aug. 31, 2021) ("At step two of the sequential evaluation process,

8

Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement.")).

Further, at step two of the sequential evaluation, a plaintiff must show that he suffers from a "severe impairment" in order to warrant a finding of disability. *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation." *Hobbs v. Comm'r of Soc. Sec.*, No. 1:14-cv-121, 2015 WL 4247160, at *5 (W.D. Mich. July 13, 2015) (citing *Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987)). "Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error." *Hobbs*, 2015 WL 4247160 at *5 (citing *Maziarz,* 837 F.2d at 244). An ALJ can consider non-severe impairments in determining the RFC. *Id.* "The fact that some of [Plaintiff]'s impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue,* 266 F. App'x 451, 457 (6th Cir. 2008).

Here, the basis for Plaintiff's first claimed step two error is that the ALJ did not find certain impairments to be severe. To be sure, the ALJ specifically identified certain of Plaintiff's impairments as non-severe. Nevertheless, the ALJ found several impairments to be severe. (R. at 940.) Accordingly, as the above authority confirms, that fact that, as Plaintiff contends, the ALJ determined that certain other impairments were non-severe is legally irrelevant. As such, Plaintiff's argument on this point cannot support a finding of error and remand is not warranted.

Turning to Plaintiff's next issue, under SSR 96-8p, all impairments—both severe and non-severe—must be considered when formulating a claimant's RFC.  This means that even limitations resulting from impairments that, on their own, may not significantly limit the ability to perform basic work activities must still be factored into the overall RFC assessment.  Additionally, symptoms such as fatigue, pain, or other subjective complaints are evaluated using a two-step process: first, the adjudicator must determine whether there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; second, the intensity, persistence, and limiting effects of those symptoms must be assessed to determine how they impact the individual's ability to function in a work setting.  This ensures a comprehensive and fair evaluation of the claimant's true capacity to work.  Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996).

Plaintiff argues that the ALJ violated SSR 96-8p by failing to consider any effects relating to Plaintiff's physical problems in the RFC.  As Plaintiff states it:

> At the hearing prior to the remand, Plaintiff testified that most of her health conditions stemmed from her autoimmune thyroid with her levels fluctuating and she was not able to sleep properly and then could not function the next day (R. at 48). She also had sleep apnea, anxiety, and panic attacks (R. at 49). She had panic attacks both at night and during the day (R. at 51). She had a full-blown panic attack once to twice daily (Id.). She could only lift between 5 and 10 pounds, stand for half an hour, and sit for half an hour to an hour (R. at 55-56). She alternated positions (R. at 56). She would become dizzy from either lack of sleep or anxiety or the thyroid (R. at 59). Then, at the remanded hearing, she stated that after her back surgery in 2015, her job provided a desk station for her where she could stand or sit (R. at 981).

(ECF No. 7 at 13.)

A review of the ALJ's decision confirms that the ALJ did proceed to consider the effects of Plaintiff's physical problems.  For example, with respect to Plaintiff's thyroid, the ALJ noted

that Plaintiff "continued to take medications." (R. at 951.) As for Plaintiff's panic attacks, the ALJ noted that Plaintiff did not keep a "panic log or journal objectively documenting the frequency, persistency, duration, or severity of her panic symptomology to discuss objectively with her medical providers." (*Id*.) In considering her allegations of anxiety, the ALJ stated that Plaintiff "reported significant anxiety during this period of time; however, the record supports she admitted she did see improvement when she was compliant with the utilization of prescribed conservative treatment modalities including medication and counseling intervention." (R. at 952.) With respect to back pain and lifting issues, the ALJ discussed that

> [t]he claimant reported ongoing back pain after her 2015 surgery. However, during the relevant period the record supported little treatment for back related complaints. The claimant admitted some low back symptoms after acute increased activity, but self-reported her symptoms were alleviated via utilization of conservative treatment such as application of ice. The claimant reported limited ability to stand/walk and even sit due to back pain; however, treatment notes during this time showed intact range of motion, strength in all extremities, gait/station, as well as intact reflexes. The claimant was not noted to have coordination problems. She showed no objectively documented spinal instability. During this period of time there was no objective treatment with spinal specialists recommending any further invasive treatment for any spinal residuals. The claimant was not seeking emergent treatment for acute back pain exacerbations or back pain described as being intractable. She reported having lifting limits after surgery initially; however, the record supported intact strength in her extremities, including upper extremities during the relevant period, no significant injury or impairment of the upper extremities and no reports of neck symptomology preventing the use of her upper extremities during this period of time.

(R. at 951.) Further, the ALJ discussed the prior administrative physical findings (R. at 952), the physical functional limitations opined by Dr. Kurpita (R. at 955, 956), and the functional statement from Dr. Viers (R. at 957), noting specifically that "[t]he treatment record supported generally conservative intervention during this period of time for the physical conditions. Thus, the undersigned finds reduction to the medium exertional level supports these physical

11

conditions." (R. at 952.)  In sum, Plaintiff's argument to the contrary relies wholly on a mischaracterization of the record.  Accordingly, the Court finds no error with respect to the ALJ's step two findings and remand is not warranted.

### B.  The ALJ Properly Evaluated the Medical Source Opinions at Issue

Plaintiff claims that the ALJ failed to properly evaluate the opinions of Ruslana Kurpita, M.D., Plaintiff's primary care physician; Dr. James Viers, Plaintiff's treating chiropractor for approximately ten years; and presumably, the state agency reviewing physicians and psychologists.  Relevant here, 20 C.F.R. § 404.1520c dictates how medical opinions are evaluated in Social Security cases and mandates that medical opinion be examined for both "supportability" and "consistency." 20 C.F.R. § 404.1520C(c)(1).  Supportability focuses on the provider's explanations for his or her opinions, including whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations. *See* 20 C.F.R. § 416.920c(c)(1). Consistency is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2). The ALJ may also consider (but is not required to articulate) additional factors: a medical source's specialization and elements of the relationship the medical source has with the claimant, including the length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship. 20 C.F.R. § 404.1520c(c)(3-5).  Plaintiff contends that the ALJ failed to properly consider, or articulate her consideration of, the supportability or consistency factors in her evaluation of the opinions from each of these providers.

## 1. Dr. Kurpita

Initially, with respect to Dr. Kurpita, Plaintiff asserts that the ALJ did not comply with the Order of Remand because she failed to evaluate Dr. Kurpita's opinions for supportability and consistency. By way of background, as noted, Dr. Kurpita submitted two separate medical source statements. First, Dr. Kurpita completed a medical source statement on April 30, 2021. (R. at 734-36.) Dr. Kurpita listed Plaintiff's physical symptoms as poor coordination and balance with dizziness, metabolic problems with nutritional deficiencies, hormonal weight fluctuations, episodic heart palpitations, digestive problems, bowel problems with pain, neck and shoulder and back pain, insomnia, and sleep apnea. (R. at 734.) She agreed that Plaintiff's ability to participate in regular work activity on a daily basis is substantially reduced. (R. at 735.) Dr. Kurpita opined that Plaintiff would be absent more than 4 days per month. (*Id.*) Dr. Kurpita also opined Plaintiff could stand for 1 to 2 hours, sit less than 2 hours, occasionally lift less than 10 pounds and she should avoid lifting more than 15 pounds. (R. at 736.) Dr. Kurpita concluded that Plaintiff's physical and mental symptoms will significantly and consistently interfere with work performance and attendance for a period expected to last longer than 12 months. (*Id.*)

The ALJ found this specific opinion to be "partially persuasive," discussing as follows:

The [ALJ] has read and considered the statement from Dr. Kurpita evidenced within Exhibit 11F and duplicated within Exhibit 17F from April 2021. Dr. Kurpita noted in a letter within 11F that she felt the claimant was "unable to work on a sustained basis."The [ALJ] notes statements regarding employability and disability are considered statements reserved for the Commissioner and are not opinions. Further, in accordance with 20 CFR 404.1520(b)(c) such statements are found inherently neither persuasive nor valuable. While noting that this assessment was primarily focused on Plaintiff's physical conditions and citing Plaintiff's psychologist would provide her own mental assessment, the provider did include functional limits as to

Plaintiff's mental health functioning. Dr. Kurpita was Plaintiff's primary care provider and noted Plaintiff would miss more than 4 days per month due to her impairments/treatment. The [ALJ] finds such statement was inconsistent with the providers treatment notes and the general evidence of record. [Plaintiff] was not involved in any treatment modality with any extended recovery period. Her treatment remained conservative with use of intermittent conservative medications and therapy. [Plaintiff] was not requiring recurrent emergent treatment for acute condition/symptom exacerbation and there were no hospitalizations of extended duration for mental or physical conditions during the relevant period. *** . She also performed generally normal activities of daily living with breaks largely due to her physical complaints (Exhibit 3E). The [ALJ] notes that moderate social limits were not inconsistent with her diagnoses of depression/anxiety with panic. However, the [ALJ] finds the marked limitation in concentration/persistence/pace inconsistent with her mental treatment notes describing intact attention span/concentration as well as routinely present intact functional capacity/status with intact thoughts and content. The [ALJ] notes the listed episodes of decompensation inherently inconsistent with the medical evidence, as [Plaintiff] did not require any emergent treatment for acute mental health symptom exacerbation nor did she require hospitalization for any extended duration or admission into a facility with structured living setting for any extended duration due to diagnosed mental instability. The record supported no recurrent presence of suicidal/homicidal ideation with active plan or intent. [Dr. Kurpita] continued to provide physical functional limitations citing [Plaintiff] could stand less than 1-2 hours; sit less than 2 hours; would require the ability to change positions at will; would require frequent rest breaks; would require frequent access to toilet facilities; could occasionally lift less than 10 pounds; should avoid lifting more than 15 pounds; would frequently be off task due to issues with concentration; would require flexible start/stop times without notice; would require extended work deadlines and rescheduled tasks as needed; would be capable of low work stress; and would miss 4-6 days of work per month as a result of any of the impairment conditions. She noted that further exertional, postural, manipulative, visual, communication, and environmental limits were not applicable. The [ALJ] notes the lack of cited postural, manipulative, and additional environmental limits are not inconsistent with the evidence showing no significant extremity joint degeneration, no joint swelling, and are supported by the evidence documenting intact gait, normal 5/5 extremity strength, intact sensory function, normal bulk/tone, and intact reflexes. The [ALJ] finds lack of visual and communicative limits consistent with lack of alleged impairment in either of these areas, noting during this period of time the record supported no hearing, speaking, or vision issues requiring invasive or recurrent treatment modalities. The [ALJ] finds some of the limits noted by the examiner less persuasive as they were not vocationally relevant utilizing undefined terms for example there was no definition to at will positional changes, frequent breaks was not defined, and low work stress was not defined. The [ALJ] finds these limits do not adequately articulate limitation

14

for use in a residual functional capacity. *** The [ALJ] has not adopted the physical functional limits on sitting, standing, lifting, and carrying provided by the physician. The [ALJ] notes such functional limitations are inherently inconsistent with her routine treatment notes and the other treatment notes of record. Despite the presence of obesity and spinal degeneration, Plaintiff continued to evidence recurrent presence of normal gait and station, intact reflexes, normal sensory findings, normal 5/5 strength in the extremities, normal muscle tone/bulk, and was without the evidence of stiffness or weakness. The [ALJ] notes that all treatment for these conditions during the relevant period was conservative. There was no discussion of invasive treatment for the back or obesity. [Plaintiff] evidenced only moderate spine degenerative changes incidentally on imaging obtained for conservative treatment of other conditions. She was not routinely seeking management for her back with spinal specialists during the relevant period. [Plaintiff] was not recurrently seeking emergent treatment for symptom exacerbations or pain and was self reportedly engaging in generally normal routine activities of daily living (Exhibit 3E). Thus, the [ALJ] finds the assessment noted by this primary provider no more than partially persuasive as discussed herein.

(R. at 954-56.)

In May 2022, Dr. Kurpita completed a Physical Medical Source Statement.  (R. at 776-779.)  At that time, Dr. Kurpita opined that Plaintiff could only sit for 60 minutes at a time, less than 2 hours per workday, and stand/walk for 60 minutes at a time, less than 2 hours per workday.  She would need to walk around every hour for 10 minutes and would need 5 to 10 unscheduled breaks during a workday.  (R. at 777.)

The ALJ evaluated Dr. Kurpita's May 2022's opinion as follows:

The [ALJ] has read and considered the statement from Dr. Kurpita from May 2022 evidenced within Exhibit 17F. It should be noted this form was completed by the primary care provider after the expiration of the date last insured. While it is outside the period under consideration, it referenced the prior capacity assessment completed in April 2021 within 11F and stressed the treatment relationship dated back to the period under consideration. Thus, the statement was considered. Dr. Kurpita noted [Plaintiff] could sit for 1 hour at a time and stand for 1 hour at a time and could sit and stand/walk for a total of less than 2 hours; would need to walk every hour for 10 minutes; would require unscheduled breaks (for muscle weakness, fatigue, and pain/paresthesia numbness); could occasionally lift less than 10 pounds and rarely lift up to 20 pounds; would be off task greater than 25 percent

15

of the time; was not capable of even low stress work; and would miss more than 4 days per month. The [ALJ] has not adopted this assessment verbatim. The [ALJ] finds the assessment appears to rely heavily upon [Plaintiff]'s subjective repot of symptoms and limitations, which as noted above are not entirely consistent with the objective evidence or diagnostic testing/imaging of record. Here, the [ALJ] notes the provider precluded even low stress work but found [Plaintiff] capable of low stress work on the form at 11F. The provider referenced symptomology within her form at 11F as support for her provided limitations on the form at 17F. Thus, the [ALJ] finds internal inconsistency with the level of stress related work [Plaintiff] could perform. While citing high anxiety and panic as a basis for the reduction in stress related work levels, the provider was only [Plaintiff]'s general practitioner and was not her mental health specific provider, therapist, or counselor. [Plaintiff] did not provide to her any panic log or journal documenting the frequency/severity/persistence/duration of panic symptomology. Further, [Plaintiff] as noted above reported improvement in both anxiety and panic when she was compliant with prescribed medications and therapy intervention. The provider cited [Plaintiff] would be absent from work 4 days per month. Objectively the treatment record does not support such absences. [Plaintiff] was not involved in any treatment that required a recovery period. She was not seeking recurrent emergent treatment due to acute physical or mental symptom exacerbations. [Plaintiff] required no recurrent hospitalizations of any extended duration to treat her conditions. While the provider cited [Plaintiff] would be off task 25 percent of the day, the record supports when she was observed by this provider and other providers, she was alert and oriented, showed intact thought processes and content, maintained intact attention/concentration, and was not routinely observed to be easily distractable. [Plaintiff] completed tasks that required sustained attention/concentration such as driving, reciting her medical history, managing her medical care/medications, and managing her own finances. The [ALJ] has not adopted the exertional limits on lifting/carrying; sitting/standing/walking or need for breaks from the functional form provided by Dr. Kurpita. She cited [Plaintiff] exhibited muscle weakness and pain/paresthesia/numbness and considered such symptoms when assessing those limitations. It should be noted such functional limits are internally inconsistent with the providers treatment notes of record during the relevant period and overstate [Plaintiff]'s functional limits during the relevant period. Further, such symptomology of weakness and paresthesia/numbness were not recurrently objectively assessed during the relevant period. [Plaintiff] underwent no EMG nerve conduction testing of the upper or lower extremities supporting objective presence of paresthesia. Further, objective weakness as discussed herein was not recurrently appreciated as strength and muscle tone were noted to be intact and normal. [Plaintiff] self-reported fatigue related to nonsevere conditions including her thyroid, but this was managed conservative with Synthroid medication and adjustments in her medication dose. Such significant exertional/functional restrictions are inconsistent with [Plaintiff]'s routine

16

treatment notes documenting no upper extremity or neck problems, intact normal gait and station, intact sensory findings, normal reflexes, intact 5/5 strength present in all extremities, normal muscle tone, and lack of observed joint pain or swelling (Exhibits 1F; 2F; 3F; 6F; 9F). Such findings are inconsistent with the no more than moderate degenerative changes found within the lumbar spine incidentally while obtaining other radiographic imaging of other nonsevere medical conditions (Exhibit 8F/70). The [ALJ] finds such significant functional limits are inconsistent with the evidence supporting no specialized spinal intervention or weight loss intervention during this relevant period of time. Here, the [ALJ] finds the provided statement inconsistent with and not supported by the record as a whole. Thus, due to internal inconsistency and inconsistency with the other evidence of record the [ALJ] finds the functional form generally unpersuasive.

(R. at 956-57.)

Plaintiff does not explain how the ALJ failed to articulate her consideration of the issues of supportability or consistency in discussing either of Dr. Kurpita's opinions.  Indeed, the excerpts above demonstrate that Plaintiff's characterization of the ALJ's analysis is sorely inaccurate.  For example, in considering Dr. Kurpita's initial opinion, the ALJ specifically noted that Dr. Kurpita's opined mental limitations were "inconsistent with [her] treatment notes and the general evidence of record" and her opined physical limitations were "inconsistent with her routine treatment notes and other treatment notes of record."  (R. at 955, 956.)  Similarly, with respect to Dr. Kurpita's more recent opinion, the ALJ noted "functional limits [] internally inconsistent with [Dr. Kurpita's] treatment notes of record during the relevant period" and "inconsistent[] with the other evidence of record."  (R. at 957.)  To be sure, there is some indication that the ALJ used the term "consistency" when discussing whether Dr. Kurpita's treatment notes supported her opinions.  Nevertheless, an ALJ's decision not to explicitly use the "magic words" of "supportability" and "consistency" in his or her analysis does not translate to a finding that the regulations were not adhered to if the analysis otherwise addresses these factors.

17

*See Sasha M. v. Comm'r*, Case No. 2:22-cv-2101, 2023 WL 1793536, at *6 (S.D. Ohio Feb. 7, 2023) ("While the ALJ did not use the 'magic words' supportability and consistency, her line of reasoning addressed both.") (quoting *Cormany v. Comm'r* of Soc. Sec., No. 5:21-CV-933, 2022 WL 2611952, at *7 (N.D. Ohio May 20, 2022), *report and recommendation adopted sub nom. Cormany v. Kijakazi*, No. 5:21CV933, 2022 WL 4115232 (N.D. Ohio Sept. 9, 2022)). Here, as reflected above, the ALJ's discussion of both of Dr. Kurpita's opinions speaks directly to the issues of consistency and supportability. Accordingly, the Court finds no merit to Plaintiff's claim on this issue.

Further, much of Plaintiff's argument relating to the ALJ's discussion of Dr. Kurpita's opinions fairly can be characterized as a complaint that the ALJ cherry-picked the evidence. (ECF No. 7 at 17 "[t]he ALJ failed to discuss the evidence which supported Dr. Kurpita's opinions.") It is not the province of this Court, however, to reweigh the opinion evidence. *See Whetsel v. Comm'r of Soc. Sec.*, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("it is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. A'ppx 586, 588 (6th Cir. 2019) ("[t]his [C]ourt does not weigh evidence, assess credibility, or resolve conflicts in testimony— that's the ALJ's job."). Accordingly, the Court finds the ALJ's evaluation of Dr. Kurpita's opinions to be supported by substantial evidence.

### 2. State Agency Physicians and Psychologists

As noted, Plaintiff also appears to assert that the ALJ did not articulate how she considered the supportability and consistency factors with respect to the opinions of the state

18

agency reviewing physicians and psychologists.  With respect to those opinions, the ALJ had this

to say:

> The [ALJ] has read and considered the prior administrative physical findings evidenced within Exhibits 2A and 4A. The prior physical findings denoted nonsevere physical conditions and provided no formal physical residual functional capacity. The [ALJ] finds the additional evidence of record submitted since the time of the prior administrative findings, including the hearing level evidence and claimant testimony supported additional physical conditions noted considered by the State Agency, such as obesity, and the [ALJ] finds the record supported severe impairment during the relevant period. The [ALJ] finds [Plaintiff] had a history of spinal degeneration requiring surgery. While the surgery predated the period under consideration, [Plaintiff's] history of degeneration supported herniation requiring a surgical intervention (Exhibit 1F/21; 8F/70). Additionally, the [ALJ] notes imaging obtained for other conditions showed incidental spinal findings during August 2017, during the relevant period consistent with ongoing moderate degenerative changes within the lumbar spine (Exhibit 4F/18). The [ALJ] notes the record supported reports of intermittent back pain, requiring conservative treatment. Additionally, evidence submitted after the expiration of the date last insured in 2021 supported ongoing presence of lumbar spine degeneration. Thus, the [ALJ] considered the spinal degenerative evidence in the light most reasonable to [Plaintiff] and considered the spinal degeneration a severe impairment during the relevant period. The [ALJ] also considered obesity severe, as [Plaintiff] experienced weight fluctuations consistent with morbid obesity and obesity. The [ALJ] collectively finds a reduction to the medium exertional level supports the consideration of these conditions as severe impairments during the relevant period. The [ALJ] finds no further postural, manipulative, or environmental limits are supported by the record. The [ALJ] notes despite the spinal degeneration and combined obesity, [Plaintiff] exhibited consistent present of normal gait and station with normal muscle tone and bulk, with normal reflexes, and normal strength in all four of her extremities (Exhibits 2F; 3F; 4F; 6F; 9F). [Plaintiff] showed no stiffness or weakness, no spinal or joint instability, and there were no reported falls or treatment for fall related injuries. [Plaintiff] evidenced normal sensory findings (Exhibit 6F/8, 12). There was no recurrent presence of joint swelling or reduced range of motion. [Plaintiff] did not report exacerbation of pain or increased limits related to obesity when exposed to atmospheric conditions or pulmonary irritants. [Plaintiff] continued to drive. The treatment record supported generally conservative intervention during this period of time for the physical conditions. Thus, the [ALJ] finds reduction to the medium exertional level supports these physical conditions. Therefore, the [ALJ] finds the prior physical findings collectively unpersuasive, noting the evidence did support severe physical impairments and a more restrictive physical functional capacity during the relevant

period.

The [ALJ] has read and considered the prior administrative mental findings evidenced within Exhibits 2A and 4A. The prior mental findings noted [Plaintiff] could perform 1-3 step tasks with no high pace or high production quotas; could tolerate occasional superficial interaction with others; and could work in a setting where changes were explained in advance. Upon reconsideration, the verbiage of the limits was somewhat changed, noting she could perform short cycle tasks with no high pace or high production quotas; could tolerate occasional/superficial interaction with others; and could work within a set routine where major changes were explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations. It should be noted the [ALJ] has not adopted the initial or reconsideration findings verbatim. The [ALJ] notes the language used in the prior medical findings (such as reduction to specific step tasks and superficial) are not vocationally defined and thus do not adequately articulate the limitation for use in a residual functional capacity. The [ALJ] finds the collective prior mental findings persuasive only in so far as they support limitation in interaction with others; concentration/persistence/pace; and adaption. The [ALJ] finds the lack of significant limitation in the areas of understanding, remembering, and applying information generally consistent with the lack of alleged cognitive/intellectual deficit/impairment. Such lack of significant imitation remains consistent with the [Plaintiff's] educational history, ability to manage her own schedule, and manage her own finances, as well as make independent purchases. The [ALJ] has not adopted the limitations in concentration/persistence/pace verbatim but finds limitation in the area supported by [Plaintiff's] mental symptomology, including depression with reports of low motivation at times; and anxiety with reports of worry and intermittent panic limiting sleep. Greater than moderate limit in this area is not consistent with the record as [Plaintiff] admittedly reported significant benefit with the use of conservative treatment including medication with therapy/counseling (Exhibit 2F/9; 3F/61; 9F/24, 31). [Plaintiff] did not require significant emergent treatment for panic related symptomology. Further, she was noted to have normal thought processes/content and exhibited intact functional status upon mental health treatment sessions. The [ALJ] has not adopted the limitation in social functioning verbatim, noting superficial is not a vocationally defined term. However, the [ALJ] finds that limitations in social functioning is supported by [Plaintiff's] reported anxiety and reports of feeling overwhelmed when in public and her preference to leave her home accompanied by her husband. The [ALJ] finds greater than moderate limitation in social functioning is not consistent with the record because [Plaintiff] was noted to get along appropriately with medical providers and their staff and treatment notes described her consistently as being alert and oriented as well as cooperative. She did not exhibit hostility and her irritability was only intermittent. The record supports she could leave her home unaccompanied if necessary and she could go into public places.

There was no presence of diagnosed agoraphobia within the record by any medical provider. She continued to interact with friends and family, even during the pandemic via computer technology (Exhibit 3E). The [ALJ] has not adopted the limitation in adaptation verbatim but finds limitation in the area is generally supported by [Plaintiff's] need for mental health specific intervention, including therapy/counseling and intermittent use of mental health medications. The [ALJ] finds greater limitation in this area is not consistent with the record because [Plaintiff] did not evidence any need for utilization of structured resources such as case managers to manage her schedule/appointments. [Plaintiff] did not require emergent treatment for recurrent symptom exacerbations and there were no recurrently present thought abnormalities resulting in inability to manage herself such as suicidal or homicidal ideations requiring any extended stay hospitalization. It should be noted within the residual functional capacity assessment above, the [ALJ] has used more specific, vocationally defined policy compliant language to express the moderate limitations arising from [Plaintiff's] mental impairments. Therefore, collectively, the [ALJ] finds the prior mental findings no more than partially persuasive as discussed herein.

(R. at 952-954.)

Again, Plaintiff does not explain how the ALJ failed to articulate her consideration of the issues of supportability or consistency in discussing the opinions from either the state agency reviewing psychologists or the stage agency reviewing physicians.  And again, the above excerpts demonstrate that Plaintiff's characterization of the ALJ's analysis is wholly inaccurate. First, as the ALJ noted, "[t]he prior physical findings denoted nonsevere physical conditions and provided no formal physical residual functional capacity."  (R. at 952.)  The ALJ then considered, and discussed at some length, additional evidence of record submitted since the time of those findings.  (*Id.*)  Construing that evidence in Plaintiff's favor, the ALJ found a "reduction to the medium exertional level" was supported and rejected the prior physical findings as "collectively unpersuasive."  (*Id.*)  While the ALJ may not have explicitly referred to "consistency" or "supportability," the decision, read as a whole and with common sense, indicates the ALJ discounted the state agency physicians' findings based on later-submitted

21

records showing severe impairments, including obesity and spinal degeneration.  Substantial evidence in the record supports the ALJ's determination that Plaintiff should be limited to medium work, and the evidence that came after the state agency reviews is consistent with that conclusion.  Indeed, that the ALJ departed from the state agency reviewers' opinions in Plaintiff's favor wholly undermines Plaintiff's argument that the ALJ erred in "failing to adopt the totality of the opinions . . . of . . . the reviewing . . . sources."  (ECF No. 7 at 18.)  *See Kristin H. v. Comm'r of Soc. Sec.,* No. 2:22-CV-03869, 2024 WL 1340271, at *3 (S.D. Ohio Mar. 29, 2024) (citing *Putman v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at *5 (S.D. Ohio July 1, 2021) ("An ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined."); *Mosed v. Comm'r of Soc. Sec.*, No. 2:14-CV-14357, 2016 WL 6211288 (E.D. Mich. Jan. 22, 2016), *report and recommendation adopted*, No. 14-CV-14357, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a *more restrictive* RFC than that opined by the State agency consultants is curious and unavailing.")).

Likewise, the Court finds no error in the ALJ's discussion of the prior administrative mental findings and finds that the ALJ's conclusions, reflected above, are supported by substantial evidence.  A plain reading of the ALJ's discussion of these specific findings indicates that the ALJ discounted the state agency psychologists' in support of using "more specific, vocationally defined policy compliant language to express the moderate limitations arising from [Plaintiff's] mental impairments."  (R. at 954.)  Accordingly, the Court finds that the ALJ sufficiently met her burden of articulation with respect to her evaluation of the opinions of the

22

state agency psychologists and physicians and built an accurate and logical bridge supporting her

conclusions. Under these circumstances, remand is not warranted.

### 3. Dr. Viers

Plaintiff also asserts that the ALJ" failed to establish supportability and consistency for her

Determination" that Dr. Viers' opinion was not persuasive. (ECF No. 7 at 18.) The ALJ discussed

Dr. Viers' opinion in this way:

> The undersigned has read and considered the statement from Dr. Viers DC from January 2024 evidenced within Exhibit 21F. This provider completed the functional form in January 2024, years after the expiration of the date last insured. While the provider completed the form after the expiration of the form, he cited he treated the claimant for approximately 10 years, suggesting his statements could relate back to the period under adjudication. Thus, the undersigned has considered and discussed this opinion as it would relate to the period under consideration. The chiropractor listed conditions of degenerative disc disease of both the cervical and lumbar spine with upper and lower extremity radiculopathy as well as anxiety when assessing the limitations within the form. The chiropractor cited the claimant could walk 2 city blocks; could sit for 20-30 minutes at a time; could stand for 20-30 minutes at a time; could sit, stand/walk for less than 2 hours; would require a job that requires shifting positions at will; would need to walk around during the day every 30 minutes for 5 minutes; would need unscheduled breaks; would need to elevate her legs 50 percent of the day; would need an assistive device; could rarely lift less than 10 pounds; would have postural limits; would be off task 25 percent of the time; would be incapable of low stress work; and would mis smore than 4 days per month. First, it should be noted while the provider assessed he had treated the claimant for 10 years and may have treated the claimant both before her alleged onset date and after the expiration of the date last insured, the record was devoid of any routine or consistent treatment with this chiropractor during the relevant period under consideration. There were no submitted routine treatment notes from this provider during the relevant period. The provider when assessing the claimant's functional limitations, considered impairments that were not objectively present until years after the expiration of her date last insured, including her cervical spine degeneration. During the relevant period the claimant's cervical spine degeneration was a nonmedically determinable impairment, as discussed above, for which was not objective present or diagnosed and for which she had not engaged in any treatment. The undersigned notes while exertional limitations were supported by the existing spinal degeneration in the lumbar spine and obesity, the undersigned finds such significant exertional reduction noted by this provider is not objectively

23

supported by the treatment notes of record during the relevant period. The limits overstate the claimant's functional limits at the time, in part because of their consideration of conditions that were yet to be objectively present such as the cervical spine degeneration and cervical radiculopathy. The undersigned notes the leg elevation for 50 percent of the day and utilization of an assistive device were inherently inconsistent with even the claimant's routine primary care providers opinions/assessments during the relevant period (Exhibit 11F; 17F). There is no objective evidence during the period such as leg swelling or joint swelling or instability of the spine or leg weakness with irregular gait/station to support the utilization of the assistive device during the relevant period. The undersigned finds the exertional limits on sitting, standing, walking, and lifting/carrying are more restrictive than the objective treatment notes of record during the period documenting intact strength at 5/5 in the extremities, normal range of motion, normal sensory findings, normal reflexes, normal muscle tone, normal gait/station, and no presence of stiffness or weakness support. The undersigned finds postural limits assessed by the examiner are also not supported by the record, as the claimant showed no joint degeneration in the extremities, no joint stiffness or swelling, no reduced range of motion, no sensory issues, and showed ongoing intact strength and sensory findings with intact gait and station. The undersigned notes the absences from the workplace were not consistent with any physical treatment modality of record. The claimant was not engaging in any physical treatment with a recovery period. She did not seek emergent treatment for physical symptom exacerbations on any routine or consistent basis or for pain described as being intractable during the relevant period. She did not require hospitalizations of extended duration during the relevant period for physical symptomology/impairments. The record documented some reports of pain, but no more than conservative treatment. Despite pain complaints she was no observed to be distractible during her treatment sessions and remained alert, oriented, and showed intact thoughts/thought processes, which does not support the significant presence of off task behavior noted by this provider. Thus, for the reasons discussed herein, especially due to lack of objective treatment by this provider during the relevant period and consideration of medical conditions that were not objectively present until years after the expiration of her date last insured, the undersigned finds this medical assessment/opinion generally unpersuasive.

(R. at 957-958.)

As with the other medical opinions of record, Plaintiff fails to adequately explain exactly where the ALJ's evaluation of Dr. Viers' opinion falls short, leaving the Court to discern the basis for Plaintiff's claim largely on its own. In part, as with Dr. Kurpita's opinion, Plaintiff

24

points to evidence in the record she apparently believes to be helpful to her position. (ECF No. 7 at 17-18.) As stated above, however, it is not the Court's job to reweigh evidence. *Dyson,* 786 F. App'x at 588. Beyond that, Plaintiff states that the ALJ found that Dr. Viers' report was completed after the date last insured and that Dr. Viers had treated Plaintiff for approximately ten years. (*Id*. at 18.) Both of these points were addressed by the ALJ as reflected in the excerpt above and do nothing to address the issue Plaintiff raises. Moreover, the excerpt above again confirms that, read as a whole and with common sense, the ALJ's discussion confirms that she did consider the required factors of supportability and consistency. Indeed, the ALJ specifically noted that "[t]here were no submitted routine treatment notes from this provider during the relevant period." (R. at 958.) The ALJ then proceeded to explain, also at some length, other objective evidence in the record supporting her finding that Dr. Viers' medical opinion was "generally unpersuasive." (*Id*.) In short, the ALJ's discussion of Dr. Viers' opinion speaks directly to the issues of consistency and supportability. Accordingly, the Court finds no merit to Plaintiff's claim on this issue.

### C. The ALJ's Finding That Plaintiff Could Perform Work at the Medium Level of Exertion was Supported by Substantial Evidence

Finally, Plaintiff raises two points relating to the ALJ's finding that she could perform work at the medium exertional level. First, Plaintiff asserts that the ALJ's finding was not supported by substantial evidence because there was no opinion or documentation confirming that Plaintiff could perform work at that level. Further, Plaintiff contends that the ALJ's RFC containing a limitation to work at the medium level was not included in the hypothetical question posed to the VE at the hearing. Neither of these arguments possesses any merit.

As to Plaintiff's first point, Sixth Circuit caselaw states that the final responsibility for deciding the RFC is reserved to the Commissioner, not a physician. *See* 20 C.F.R. § 416.927(d); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). Further, the foundation of the ALJ's RFC does not have to be a physician's medical opinion, so long as the ALJ sufficiently "make[s] a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)). Thus, although medical source opinions are considered, the final decision on the RFC is the Commissioner's. As set forth at great length above, the ALJ made a connection between her conclusion that Plaintiff was limited to the medium exertional level and the medical evidence cited. Accordingly, Plaintiff's argument fails.

The same is true as to Plaintiff's second point. Here, there is no debate that the ALJ did not explicitly limit Plaintiff to medium work in the hypothetical question posed to the vocational expert. (R. at 985 "no exertional limitations.") Indeed, the ALJ specifically acknowledged in her decision that she was including, for the first time, a functional reduction to the medium exertional level. (R. at 944 n. 1.) The ALJ also correctly noted, however, that the inclusion of such a reduction did not change the expert testimony elicited during the hearing nor impact the decisional outcome. (*Id.*) This is because, in responding to the ALJ's hypothetical question, the vocational expert testified that Plaintiff could perform work as a cleaner, a laundry worker, and a counter supply worker. (R. at 985.) The VE further described each of these representative jobs all at the medium exertional level. (*Id.*)

The fact that the ALJ did not limit the hypothetical question to medium exertional-level work is not reversible error when the VE actually identified medium exertional-level occupations

26

available to Plaintiff.  *Lankford v. Comm'r of Soc. Sec.,* No. 1:17-CV-00206-SKL, 2018 WL 6816064, at *6 (E.D. Tenn. Dec. 27, 2018).  The Court already has found that the ALJ properly considered the medical evidence regarding Plaintiff's physical condition.  To be sure, a more specific description of Plaintiff's physical functional abilities in the hypothetical question to the VE would have been advisable.  Nevertheless, under the circumstances here, this deficiency does not warrant a remand.  Accordingly, Plaintiff's final statement of error is without merit.

## VI.    CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 7) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**


Date: February 17, 2026                                    *s/ Elizabeth A. Preston Deavers*
                                                           **ELIZABETH A. PRESTON DEAVERS**
                                                           **UNITED STATES MAGISTRATE JUDGE**